# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

    Plaintiff,

-v-

ERIC NEWSOME,

    Defendant.

Case No. 3:11-cr-160

Judge Thomas M. Rose

---

**ENTRY AND ORDER OVERRULING NEWSOME'S MOTION TO SUPPRESS (Doc. #35)**

---

On October 25, 2011, a federal Grand Jury returned an Indictment charging Defendant Eric Newsome ("Newsome") with several counts of drug trafficking. (Doc. #6.) On January 13, 2012, Newsome filed a Motion To Suppress any and all statements made by him to any Government official in the above-captioned matter.

Newsome argues that the Government did not obtain a knowing and voluntary Miranda waiver and asserts that he "may have been" in Federal custody for more than six hours without being presented to a magistrate in violation of 18 U.S.C. § 3501(c). (Doc. #35.) An evidentiary hearing on Newsome's Motion To Suppress was conducted on January 30, 2012. (Doc. #37.) The Jury Trial of this matter is set for May 7, 2012.

Following the hearing, Newsome filed a Memorandum In Support of his Motion To Suppress. (Doc. #41.) The Government has responded (doc. #44), and the time has run and Newsome has not replied. Therefore, Newsome's Motion To Suppress is ripe for decision.

Findings of relevant facts will first be set forth. This will be followed by the relevant legal provisions and an analysis of Newsome's Motion To Suppress.

**FINDINGS OF RELEVANT FACTS**

On October 31, 2011, Newsome was arrested by ATF Special Agent Chris Reed ("SA Reed"). (1/30/12 Hearing Transcript ("Tr.") 3-4.) Special Agent Reed arrested Newsome near a private residence in Dayton pursuant to a federal arrest warrant. (Id. at 4-5.)

Shortly thereafter, SA Reed transported Newsome to a local police station and placed him in an interview room. (Id.) Once there, SA Reed proceeded to speak to Newsome, recording their conversation in the process. (Id. at 8-10.) Newsome was handcuffed during the entire time of the interview. (Id. at 11.)

After identifying himself as a federal agent and before questioning Newsome, SA Reed read Newsome his Miranda rights. (Id. at 5.) SA Reed read the Miranda rights from a card that he carried. (Id.) After the rights were read, Newsome nodded in an affirmative manner that he understood his Miranda rights. (Id.)

The Miranda rights on the card used by SA Reed are essentially the same as those required by law. (1/30/12 Hearing Transcript 11-12; Government Ex. 1.) Further, Newsome had an extensive criminal history and thus previously had been arrested by the police. (1/30/12 Transcript 28-29.)

When Newsome began to speak, SA Reed reiterated, "All right. I'm going to take it we can talk for the time being until you are done talking, correct?" (Id. at 13.) Newsome continued to speak with SA Reed over the next forty-five minutes. (Government Ex. 1.) During this time, Newsome neither asked to speak with a lawyer nor invoked his right to be silent. (1/30/12 Transcript 14-15.)

During the interview, Newsome said that he had smoked marijuana shortly before his

arrest. (Id. at 15.) However, according to SA Reed, Newsome remained alert during the interview, did not indicate that he was having difficulty understanding SA Reed, did not indicate that he was confused, and provided context-appropriate responses to the questions posed to him. (Id. 8, 15.) SA Reed had previously observed Newsome's demeanor and speech pattern in various undercover recordings, and, according to SA Reed, Newsome's behavior and speech patterns during the interview did not differ markedly from those exhibited on the undercover recordings. (Id. at 30.)

## RELEVANT LEGAL PROVISIONS

The Miranda doctrine provides that the Government may not use statements made by a defendant and stemming from a custodial interrogation of the defendant unless the Government demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Prior to any questioning, the [defendant] must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." *Id.*

The defendant may waive these rights "provided the waiver is made voluntarily, knowingly and intelligently." *Id.* "Whether a waiver is knowing and intelligent is determined by the particular facts and circumstances of the case, including the background, experience, and conduct of the accused." *Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000). The relevant question is not whether the "criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege," but rather whether the "suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel

present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574 (1987)

If the defendant indicates in any manner that he or she wants to consult with an attorney, there can be no further questioning. *Miranda*, 384 U.S. at 444-45. Likewise, if the individual indicates in any manner that he or she does not wish to be interrogated, questioning may not proceed. *Id.* at 445. However, a waiver may be clearly inferred when a defendant, after being properly informed of his rights and indicating that he understands them, nevertheless does nothing to invoke those rights and speaks. *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009). Thus, courts may infer an implied waiver from the actions or words of the person being interrogated. *Id.*

A relinquishment of Miranda rights must be "the product of a free and deliberate choice rather than intimidation, coercion or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Also, any relinquishment of Miranda rights must have been made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* Finally, the Government must prove by a preponderance of the evidence that Miranda rights were waived. *See Lego v. Twomey*, 404 U.S. 477, 488 (1972).

## ANALYSIS

Newsome argues that his incriminatory statements should be suppressed because he did not knowingly and voluntarily waive his Miranda rights. However, the Government obtained a knowing and voluntary waiver from Newsome.

SA Reed verbally apprised Newsome of his Miranda rights. When Newsome was asked whether he understood those rights, Newsome nodded his head up and down indicating that he did. After confirmation by SA Reed that he and Newsome could talk, Newsome began to speak

with SA Reed. The interview lasted for approximately forty-five minutes during which Newsome continued to talk.

There is no evidence that Newsome was under any improper physical or mental pressures when he waived his Miranda rights. Newsome remained coherent throughout the interview. Also, this was not the first time that Newsome had contact with law enforcement officials so he had the background and experience to understand that he had the right to not speak at the time of his arrest.

Newsome argues that SA Reed did not have Newsome sign a form regarding the waiver of Miranda rights. However, the use of a form is not required. The requirement is that a waiver must, as this one was, be knowing, voluntary and intelligent.

## CONCLUSION

The Government has proved that Newsome voluntarily, knowingly and intelligently waived his Miranda rights. Therefore, Newsome's Motion To Suppress (doc. #35) is OVERRULED.

In his initial Motion To Suppress (doc. #35), Newsome asserts that he may have been in federal custody for more than six hours without being presented to a Magistrate when he allegedly made statements to SA Reed. However, he does not further argue this point in his Memorandum In Support (doc. #41.) Also, the record indicates that Newsome was in federal custody for less than six hours before he was presented to a Magistrate.

**DONE** and **ORDERED** in Dayton, Ohio this Fourth Day of April, 2012.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record